UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BIOBELE GEORGEWILL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:25-cv-22-TRM-MJD ) |
| CMH HOMES, INC., d/b/a Clayton Homes | ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Biobele Georgewill ("Plaintiff") filed this case pro se and without payment of fees. Plaintiff has filed a complaint and a motion to proceed *in forma pauperis* ("IFP") [Doc. 1]. This is the third of three lawsuits Plaintiff has filed in this Court in less than one month, all filed pro se and without payment of the administrative filing fee. All three cases relate to the same dispute over the sale and installation of a mobile home, and all three cases name the same defendant, an entity Plaintiff identifies as CMH Homes, Inc., d/b/a Clayton Homes ("Clayton Homes").[1]

The first-filed federal case, no. 1:24-cv-400, has already been dismissed pursuant to 28 U.S.C. § 1915. As set forth below, the Court also recommends dismissal in the instant case pursuant to 28 U.S.C. § 1915. The IFP motion [Doc. 1] should be denied as moot.[2]

---

[1] As explained below, this is actually Plaintiff's fourth lawsuit against Clayton Homes related to the same facts. The first one was filed in the McMinn County Circuit Court some time in 2024.

[2] In a separate report and recommendation entered contemporaneously herewith, the Court likewise recommends dismissal of related Case No. 1:25-cv-16. The two reports and recommendations are identical in terms of substance; each one addresses both currently pending cases.

Before explaining the applicable standards for IFP screening under § 1915 and addressing Plaintiff's claims in the instant case, the Court hereby **FOREWARNS** Plaintiff that if she continues to engage in this pattern of filing repetitive lawsuits (and motions, supplements, etc.) over a very short span of time, or if she otherwise submits vexatious, harassing, or frivolous filings, which require the Court to dedicate its scarce resources to review and screen, she may be enjoined and required to seek the Court's permission before filing any future pleadings or lawsuits. *See, e.g., Smith v. Akron City Council*, Nos. 98-3389, 98-3465, 1999 WL 183409, at *2 (6th Cir. Mar. 16, 1999) ("A district court has the authority to issue an injunctive order to prevent prolific litigants from filing pleadings without first obtaining court approval to do so." (citing *Feathers v. Chevron USA, Inc.*, 141 F.3d 264, 269 (6th Cir. 1998))).

I.  **STANDARDS**

A plaintiff may commence a civil action in federal court without prepaying the administrative costs of the suit if the plaintiff demonstrates she is financially unable to do so. 28 U.S.C. § 1915(a). However, a district court is required to dismiss the civil action, or portion thereof, if the court determines the complaint is frivolous or fails to state a claim upon which relief can be granted, or if the IFP plaintiff seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *see Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

The standard required by § 1915(e)(2) to properly state a claim for which relief can be granted is the same standard required by Federal Rule of Civil Procedure 12(b)(6). *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008); *accord Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). To avoid dismissal under Rule 12(b)(6), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not state "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). But it must contain more than mere "labels and conclusions, . . . a

2

formulaic recitation of the elements," or "naked assertions . . . without further factual enhancement." *Id.* at 555, 557 (citations omitted). In other words, the complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). Stated differently, "the court must be able to draw a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *KSR Int'l Co. v. Delphi Auto. Sys.,* 523 F. App'x 357, 358-59 (6th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678).

A "frivolous" claim, subject to dismissal under § 1915(e)(2)(B)(i), is one that is based on "an indisputably meritless legal theory," or on allegations of "infringement of a legal interest which clearly does not exist." *Neitzke*, 490 U.S. at 319. Such claims are described as "clearly baseless," "fanciful," "fantastic," or "delusional." *Id.* at 327-28.

In applying these standards, the Court also considers that the pleadings of pro se litigants are to be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, pro se plaintiffs must abide by "basic pleading standards," and the role of the court is not to "conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (internal quotation marks and citations omitted). "[P]ro se litigants are not relieved of the duty to develop claims with an appropriate degree of specificity." *Kafele v. Lerner, Sampson, Rothfuss, L.P.A*, 161 F. App'x 487, 491 (6th Cir. 2005).

Finally, federal courts are courts of limited jurisdiction. When presented with a case, federal courts "presume" they lack jurisdiction until the party asserting jurisdiction demonstrates otherwise. *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citing *Bender v. Williamsport Area School*

3

*Dist.*, 475 U.S. 534, 546 (1986)). Further, if at any time the Court determines it lacks subject matter jurisdiction, the Court "must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## II.   ANALYSIS

The background facts are described in the report and recommendation [Doc. 10] in Case No. 1:24-cv-400. In short, the parties allegedly performed under an oral contract for several months. At some point Clayton Homes presented a written contract for Plaintiff to sign, which Plaintiff alleges introduced a new provision requiring the parties to first attempt mediation for any disputes and, if unsuccessful, to submit to binding arbitration. Plaintiff signed the contract, but she alleges Defendant did not sign the contract, at least not at that time.

The parties' relationship eventually soured, and Plaintiff filed suit in the McMinn County Circuit Court (the "State Court"). Clayton Homes moved to stay the case and compel arbitration and in doing so, it produced a copy of the written agreement now signed by both parties. Plaintiff alleged in the State Court action that the version produced by Clayton Homes was forged or fraudulent and that the entire agreement with Clayton Homes was void. After receiving and considering Plaintiff's arguments regarding Defendant's allegedly-forged signature, the State Court nonetheless concluded the agreement was enforceable as a matter of law and granted Clayton Homes' motion, ordered the parties to arbitration, and stayed the case pending the results of the arbitration [*see* Case No. 1:24-cv-400, Doc. 18-1]. Thus, the record before the Court clearly reflects that the State Court has already adjudicated the enforceability of the agreement.

Plaintiff first filed suit in this Court against Clayton Homes on December 31, 2024 (Case No. 1:24-cv-400). Citing the Fourteenth Amendment to the United States Constitution, she alleged Clayton Homes "deprived [her] of a fair hearing" by submitting the allegedly forged/fraudulent contract to the State Court. For relief, she asked the Court to award monetary damages and to "void the fraudulent judgment issued against [her]" in the State Court case [Case No. 1:24-cv-400, Doc.

4

2 at Page ID # 13]. On January 15, 2025, the Court dismissed Plaintiff's claim with prejudice pursuant to the *Rooker-Feldman* doctrine [Case No. 1:24-cv-400, Doc. 16].[3] The Court held:

> [T]he *Rooker-Feldman* doctrine bars Plaintiff's claims in this case because it is clear that the source of her alleged injuries is the underlying state-court judgment. Indeed, Plaintiff's complaint requests that the Court "void the fraudulent judgment" entered against her in state court, order a forensic examination of documents presented to the state court, and issue an injunction to prevent Defendant from compelling arbitration ordered by the state court. Such requested relief demonstrates that the source of Plaintiff's alleged injuries is the state-court judgment, and, as a result, the Court lacks jurisdiction to decide Plaintiff's claims under the *Rooker-Feldman* doctrine.

[*Id.*].

Plaintiff then filed Case No. 1:25-cv-16 and the instant case (No. 1:25-cv-22) against Clayton Homes on January 24, and January 28, 2025, respectively. As mentioned, these two pending cases are based on the same underlying facts as the first federal case. For example, in Case No. 1:25-cv-16, Plaintiff contends Defendant's actions in "submitting an altered contract with the Defendant's signature added . . . constitute fraudulent misrepresentation," and "may constitute fraudulent conduct" [Case No. 1:25-cv-16, Doc. 2 at Page ID # 14]. She further contends Defendant "committed fraud by knowingly including a fraudulent arbitration clause in the written contract, which was never discussed or agreed to during the verbal agreement," and "intentionally forged documents to falsely impose the arbitration clause on the Plaintiff" [*id.* at Page ID # 18]. In

---

[3] As the United States Court of Appeals for the Sixth Circuit has held: "The *Rooker-Feldman* doctrine is derived from two Supreme Court cases which establish that lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings. The Court has summarized the doctrine as being designed to prevent a party losing in state court from seeking what in substance would be appellate review of the state judgment in the lower federal courts based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Pieper v. Am. Arb. Ass'n, Inc.*, 336 F.3d 458, 460 (6th Cir. 2003) (cleaned up).

Case No. 1:25-cv-22, she contends the "forged addition of Defendant's signature renders the entire agreement, including the arbitration clause, void and unenforceable." [Doc. 2-1 at Page ID # 45].

As the legal basis for her claims in Case No. 1:25-cv-16, Plaintiff cites Tennessee Code Annotated § 47-50-112 ("Contracts in writing as prima facie evidence of intent of parties; written waiver"), § 29-2-101 ("General provisions" related to Tennessee's statute of frauds); § 39-14-112 (criminal statute for extortion, which is not recognized as a tort in Tennessee[4]); § 47-18-104 (Tennessee Consumer Protection Act, prohibiting certain "Unfair or deceptive acts or practices"); and § 47-18-109(a)(3) (providing treble damages for willful or knowing violations Tennessee Consumer Protection Act).[5] Plaintiff does not directly request that the State Court's decision ordering the parties to arbitration be "voided" as she did in the first federal case, presumably because—as noted in the Court's order dismissing Plaintiff's first federal case—such relief is clearly barred by *Rooker-Feldman*. *See Hohenberg v. Shelby Cnty., Tenn.*, 68 F.4th 336, 339 (6th Cir. 2023) (holding that to be applicable, *Rooker-Feldman* requires a state court judgment, and "an effort to 'review' that judgment, namely to 'undo' or 'overturn' it" in the federal action).

But in effect, Plaintiff's claims in Case No. 1:25-cv-16 do seek to "undo" the State Court's determination that the written agreement between Plaintiff and Clayton Homes (including the arbitration provision) is enforceable.[6] For example, Plaintiff alleges "the inclusion of the

---

[4] *See Montgomery v. Hall*, 3:19-cv-0113, 2020 WL 4003769, at *10 (M.D. Tenn. July 15, 2020).

[5] In addition, Plaintiff relies on diversity jurisdiction in Case No 1:25-cv-16, asserting Clayton Homes is "a corporation located in Ringgold, Georgia" [Case No. 1:25-cv-16, Doc. 2 at Page ID # 15]. Plaintiff does not allege Clayton Homes' state of incorporation or principal place of business, which is required for relying on diversity jurisdiction.

[6] It appears there were actually two written agreements: a Sales Agreement and a "Binding Dispute Resolution Agreement." [*See* Case No. 1:25-cv-16, Doc. 3-1 at Page ID # 50-58]. For simplicity's sake, the Court uses the singular "agreement" herein.

6

arbitration clause was fraudulent because it was inserted into the contract after the work had already begun and after the full payment was made." [Doc. 2 at Page ID # 16]. In her motion for sanctions in Case No. 1:25-cv-16, Plaintiff alleges "Defendant has engaged in fraudulent conduct by submitting documents to the Court in an attempt to compel arbitration[.]" [Case No. 1:25-cv-16, Doc. 3]. These allegations/claims would appear to directly contradict the State Court's determination that "there was mutual assert to the terms" of the written agreement, including the arbitration clause [Case No. 1:24-cv-400, Doc. 18-1 at Page ID # 129-30]. *See RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th 380, 388 (6th Cir. 2021) (holding that *Rooker-Feldman* barred federal court case because the federal plaintiff "would only prevail" on its federal court claims "if the state court were wrong," which meant that the state court's order was the source of the plaintiff's injury); *Brown v. Gen. Steel Domestic Sales, LLC*, No. CV 08-00779 MMM (shx), 2008 WL 2128057, at *5 n.37 (C.D. Cal. May 19, 2008) ("the Browns *de facto* seek relief from an adverse state court ruling" by challenging aspects of the state court's order compelling arbitration in federal court); *Mailly v. Wachovia Corp.*, No. 1:03CV309, 2004 WL 601654, at *3 (M.D.N.C. Mar. 9, 2004) ("As reflected by its order compelling arbitration, the state court already found a valid arbitration clause governing the disputes regarding Ms. Mailly's account. Therefore, Ms. Mailly is, in essence, seeking review of the state court's order to compel arbitration, and the *Rooker-Feldman* doctrine applies[.]"). *Cf. Talbot v. U.S. Bank, Nat'l Ass'n*, No. 19-10214, 2019 WL 4166921, at *4 (E.D. Mich. Sept. 3, 2019) (citing cases and noting the "Sixth Circuit repeatedly has held that a suit premised on independently fraudulent conduct by a defendant, **not comprising a direct attack** on [the state court judgment], is not barred by *Rooker-Feldman*." (emphasis added)).

Indeed, the State Court specifically rejected Plaintiff's argument that the arbitration provision was unenforceable due to Defendant's alleged fraud:

> The Plaintiff has taken the position that because she never actually saw Ms. Robinson execute the aforesaid Agreements on behalf of the Defendant after the Plaintiff executed the Agreements, the Agreements are "fraudulent" and/or the result of a "forgery" and/or "alteration." As such, the Plaintiff alleges in her Motion to Strike Defendant's Motion to Compel Arbitration filed on September 9, 2024 that the "entire contract" or Agreements are "void" and that there is no "binding Agreement."
>
> . . . .
>
> . . . . However, and significantly, even if the Defendant never executed the Agreements, this Court finds that pursuant to . . . Tennessee law . . . , there was mutual assent to the terms of the Agreements, and the Defendant sufficiently manifested its assent to be bound by the Agreements. Again, it is undisputed that the Plaintiff signed the Agreements at issue. It is also undisputed that the Plaintiff offered approximately $160,000.00 to purchase a mobile home from the Defendant. It is further undisputed that the Defendant accepted the Plaintiff's offer and sold the Plaintiff a mobile home. It is likewise undisputed that the Defendant delivered the mobile home to Plaintiff's property. It is also undisputed that the parties have attended mediation, which is the prerequisite to arbitration, and is consistent with the terms of the Binding Dispute Resolution Agreement. Moreover, and once again, the Plaintiff in her original Complaint alleged that she "completed the purchase of a home from Clayton Homes."

[Doc. 18-1 at Page ID # 130]. In other words, the judgment of the State Court was to uphold the agreement and order the parties to arbitration. Plaintiff cannot prevail on her fraud (and related) claims in this case without "undoing" that judgment.

In the instant case (No. 1:25-cv-22), Plaintiff's third federal case, Plaintiff explicitly asks the Court to: "Declare the arbitration agreement is invalid and unenforceable;" "Declare that Defendant's signature on the agreement was improperly added and constitutes a forgery, rendering the entire agreement void;" and to "Order that Defendant be precluded from compelling arbitration

8

Case 1:25-cv-00022-TRM-MJD    Document 8    Filed 02/12/25    Page 8 of 10    PageID #: 65

under the invalid agreement" [Case No. 1:25-cv-22, Doc. 2-1]. As explained in Case No. 1:24-cv-400, such relief is clearly barred by *Rooker-Feldman*. *See Pieper*, 336 F.3d at 464 ("If Pieper were permitted to circumvent the state court's order staying litigation and compelling arbitration, so could any party who is forced by a state court to arbitrate its disputes. Any party dissatisfied with a state court's order compelling arbitration and staying litigation could simply file a federal lawsuit, claiming that the state court's order . . . violated his . . . rights.").

Accordingly, the Court finds *Rooker-Feldman* prevents this Court from asserting jurisdiction over Plaintiff's claims asserted in either of the two currently-pending related federal cases. Furthermore, given the nature of her claim and the relief she seeks, this Court finds it would be futile and a waste of the Court's resources to grant Plaintiff leave to amend either of her complaints to attempt to state a claim over which this Court has jurisdiction. *See Aumueller v. Ottawa Cnty. 58th Dist. Court*, No. 1:07-CV-1171, 2008 WL 52479, at *1-2 (W.D. Mich. Jan. 2, 2008) (dismissing case without leave to amend based on application of *Rooker-Feldman*).

### III. CONCLUSION

For the reasons set forth above, this Court **RECOMMENDS**[7] this case be **DISMISSED** and closed, and Plaintiff's IFP motion [Doc. 1] and motion for sanctions [Doc. 3] be **DENIED AS MOOT**, with no filing fee assessed against Plaintiff.

ENTER:

---

[7] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

/s/ *[signature]*
MIKE DUMITRU
UNITED STATES MAGISTRATE JUDGE